The Honorable Randy Thurman State Representative P.O. Box 584 Heber Springs, AR 72543-0584
Dear Representative Thurman:
This is in response to your request for an opinion concerning a new rate structure which you indicate has recently been implemented by the Heber Springs Water and Sewer Commission in an effort to reduce water demands. You note that the rate structure, known as the inverted-block rate structure, is designed to increase the unit cost of higher usage levels. You also note that the new structure resulted in a cost differential between residents living within the city limits and those outside the city.
Your specific questions are as follows:
 1. Can such a water system charge a higher rate for water provided to customers outside the city limits?
 2. Is an inverted block rate a legal method of assessing charges for water usage?
In response to your first question, A.C.A. 14-234-110 (1987) states, under subsection (b)(3), as follows:
 Water may be supplied to nonresident consumers at such rates as the legislative body of the municipality may deem just and reasonable, and the rates need not be the same as the rates charged residents of the municipality.
It is thus clear that there is statutory authority for charging a different rate to customers residing outside the city limits. The rates must, however, be "just and reasonable." The Arkansas Supreme Court has stated that the reasonableness of the rates "is a matter open to judicial review." Mt. Olive Water Ass'n v. City of Fayetteville, 313 Ark. 606, 615,856 S.W.2d 864 (1993). The court in Mt. Olive stated:
 We have stated no hard and fast rule regarding what constitutes a reasonable rate or the variables properly employed by which a municipality may charge in these situations. Reasonableness of rates must therefore be dictated by the facts of each situation and the definition of `reasonable' established by the common meaning of the term.
Id. at 612-613. The court went on to quote the following from its previous holding in Delony v. Rucker, 227 Ark. 869,302 S.W.2d 287 (1957) wherein, according to the court, it "defined the outer limits of reasonableness for rate making" (313 Ark. at 615):
 Neither the statute nor the ordinance is void on its face, as the appellees contend. Granted that the rates charged by a municipally owned public utility must be reasonable and free from arbitrary discrimination, it does not follow that the exaction of an increased charge for services supplied beyond the city limits is prima facie invalid.
Delony, 227 Ark. at 871-872.
In Delony, the court explained that:
 we do not imply that there is no limit to the rates that a city may impose upon its nonresident patrons. . . . [A]s a general rule, it is held that the municipality's charges must be `fair, reasonable, and just, uniform and nondiscriminatory.' [Citations omitted.]
* * *
 The burden of proving the city's rate schedule to be arbitrary and unreasonable rested upon the plaintiffs, for the ordinance is entitled to the presumption of validity that legislative enactments ordinarily receive. [Citation omitted.]
Id. at 872-873.
The above language was also quoted in Mt. Olive,313 Ark. at 615. See also Lawrence v. Jones, 228 Ark. 1136, 1141,313 S.W.2d 228 (1958). In Mt. Olive, the city made its prima facia showing that there was a rational basis for the difference in the rates charged. 313 Ark. at 616. The court noted that both A.C.A. 14-234-110 and the contract[1] permitted charging different rates. Id. Thus, the burden fell upon the opposition to show that the rates were "unreasonable." Id.
Assuming, therefore, that there is a rational basis for the different rates and that the rates are not unreasonable, it is my opinion that the answer to your first question is "yes." This also assumes that there is no applicable contractual barrier to the particular rates charged. See n. 1, supra.
In response to your second question, I am aware of no prohibition per se against an inverted-block rate structure. As explained in the material attached to your request, this is a method for reducing average and peak water usage, i.e., it is a means of demand management. It is therefore my opinion that the answer to this question is, generally, "yes." The inverted block rate is, as a general matter, a legal method of assessing charges for water usage. The particular facts and circumstances would, however, have to be considered in order to determine the legality of such a rate structure in a given case. This requires a case-by-case factual determination.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
[1] The terms of the particular contract(s) must, of course, be considered. Depending upon the particular facts, the contractual standard may vary from the statutory reasonableness standard as the standard governing any rate increase. See, e.g., City of Lamar v. City of Clarksville, 314 Ark. 413,863 S.W.2d 805 (1993).